AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District EASTERN DISTRICT |
|---|---|
| Name Chawa See | Prisoner No. G23104  Case No. F055800 |
| Place of Confinement High Desert State Prison, Susanville, Ca 96127 PO Box 3030 | FILED AUG 23 2010 CLERK, U.S. EASTERN DISTRICT COURT OF CALIFORNIA |
| Name of Petitioner (include name under which convicted) Chawa See | Name of Respondent (authorized person having custody of petitioner) v. McDonald |
| The Attorney General of the State of: California | |

PETITION   1:10-CV-1520-JLT-HC

1. Name and location of court which entered the judgment of conviction under attack Tulare County Superior Court · 221 S. Mooney Blvd, Rm 303 Visalia, Ca 93291

2. Date of judgment of conviction April 17, 2008

3. Length of sentence Life without Parole

4. Nature of offense involved (all counts)

"See Attachment on page 1"

5. What was your plea? (Check one)
(a) Not guilty ☒
(b) Guilty ☐
(c) Nolo contendere ☐
If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
(a) Jury ☒
(b) Judge only ☐

7. Did you testify at the trial?
Yes ☐ No ☒

8. Did you appeal from the judgment of conviction?
Yes ☒ No ☐

RECEIVED
AUG 23 2010
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

(2)

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

(a) Name of court  Court of Appeal of the State of California 5th Appellant Court

(b) Result  Denied

(c) Date of result and citation, if known  Dec. 18, 2009

(d) Grounds raised  See Attachment on page #1.b and #2

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court  California Supreme Court

(2) Result  Denied

(3) Date of result and citation, if known  March 30, 2010

(4) Grounds raised  See Attachment on page #2b

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court  None

(2) Result

(3) Date of result and citation, if known

(4) Grounds raised

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☐  No ☒

11. If your answer to 10 was "yes," give the following information:
(a) (1) Name of court

(2) Nature of proceeding

(3) Grounds raised

AO 241 (Rev. 5/85)

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?

Yes ☐   No ☐

(5) Result _____

(6) Date of result _____

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

_____

(3) Grounds raised _____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?

Yes ☐   No ☐

(5) Result _____

(6) Date of result _____

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1) First petition, etc.        Yes ☐   No ☐

(2) Second petition,          Yes ☐   No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(I) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: ____ See Attachment on page #4 ____

____

Supporting FACTS (state *briefly* without citing cases or law) ____

____ See Attachment on page #4-8 ____

____

____

B. Ground two: ____ See Attachment on page #10 ____

Supporting FACTS (state *briefly* without citing cases or law): ____

____ See Attachment on page #10-18 ____

____

Case 1:10-cv-01520-AWI-JLT Document 7 Filed 09/02/10 Page 5 of 31
Case 1:10-cv-01520-JLT Document 1 Filed 08/23/10 Page 5 of 31
AO 241 (Rev. 5/05)

C. Ground three: _"See Attachment on pg. 19"_

Supporting FACTS (state *briefly* without citing cases or law):

_"See Attachment on page 19-20"_

D. Ground four:

Supporting FACTS (state *briefly* without citing cases or law):

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: .

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐ No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing _Steve Girardot, 4046 S. Demaree, Ste, A, Visalia, Ca 93277_

(b) At arraignment and plea _Steve Girardot - " "_

(c) At trial   Steve Girardot " "

(d) At sentencing   Steve Girardot " "

(e) On appeal   Mark L. Christiansen, 44489 Town center way, #D PMB 513, Palm Desert, Ca 92260

(f)   In any post-conviction proceeding

(g)   On appeal from any adverse ruling in a post-conviction proceeding

16.   Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☒ No ☐

17.   Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒
(a)   If so, give name and location of court which imposed sentence to be served in the future:   none

(b)   Give date and length of the above sentence:   none

(c)   Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☒

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed

_____
(date)

_____
Signature of Petitioner

(7)

Case 1:10-cv-01520-JLT   Document 1   Filed 08/23/10   Page 7 of 31

# ATTACHMENT

i

Case 1:10-cv-01520-JLT   Document 1   Filed 08/23/10   Page 8 of 31

# TABLE OF CONTENTS

- Attachment from page #2 : Question #4
  Nature of offense involved (all counts)
  Page # 1

- Attachment from page #3 : Question #9(d)-(e-#4)
  • Grounds raised
    #9(d) - Page #1.b and 2

  • Grounds raised
    # e-#4 - Page #2b

- Attachment from page #5 : Question #12(a)
  X • Ground one
    • Supporting facts
    Page #4-8

- Attachment from page #5 : Question #12(b)
  X • Ground two
    • Supporting facts
    Page #10-18

- Attachment from page #6 : Question #12(c)
  X • Ground three
    • Supporting facts
    Page #19-20

ii

Attachment Transpage

Nature of offense involved (all counts)

- Count 1 - Murder (Pen. Code 187, subd.(a),
  personal discharge of a firearm allegation
  under section 12022.53, subdivision (d),
  enhanced with criminal street gang
  allegations (190.2, subd.(a)(22) and 186.22
  subd.(b)(1)(C).

- Count 2 - conspiracy to commit murder
  (182/187)

1.

(d)    <u>Grounds raised;</u>

1.) The trial court abused its discretion and violated appellant's right to a fair trial when it permitted the prosecution to introduce multiple predicate offenses and evidence of gang contacts in addition to the present offense to prove a pattern of gang activity.

1A.) Additionally, the trial court's admission of Chawa's prior acts of a minor in possession of a gun and of making terrorist threats over objection was a violation of his due process right to a fair trial and an abuse of discretion in over ruling his relevance and evidence code 352 objections, especially in the absence of a limiting instruction and in the context of this case.

        <u>A. Background</u>
        <u>B. Discussion</u>

1B.) The instructions also singled out chawa as the guilty party and amounted to an implied directed verdict.

2. Because conspiracy is not a valid theory of criminal liability, the trial court committed reversable error when it instructed the jury that

1.b

Case 1:10-cv-01520-JLT Document 1 Filed 08/23/10 Page 19 of 31

appellant could be found guilty on a conspiracy theory of criminal liability.

3. The court abused its discretion and denied appellant due process of law when it excused juror 9 prior to jury deliberations.

A. The comment of counsel in agreement after the adverse ruling was not a waiver or forfeiture of the issue.

B. Additional discussion and authority.

4. Cruel and/or unusual punishment and abuse of discretion in imposing life without parole.

5. The abstract and minutes showing a stayed restitution fine on Chawa See should be corrected.

2.

## Ground Raised;

1. The court erred in discharging a juror just prior to the start of deliberation

2. The presentation of an excessive number of gang incidents denied a fair trial and due process of law, and in Chaw a See's case was particularly inflammatory because his prior acts of being a minor in possession of a gun in his room at age fifteen and of making "Terrorist Threats" when he was fourteen years old lacked any reasonable nexus to gang activity and were unnecessary, cumulative, and highly likely to be prejudicial.

3. Cruel and/or unusual punishment and abuse of discretion in imposing Life without Parole

2.b.

Case 1:10-cv-01520-JLT   Document 1   Filed 08/23/10   Page 13 of 31

# GROUND 1

# SUPPORTING FACT

Pg. 4-8

3.

(A)    Ground one-

The court abused its discretion and denied appellant due process of law when it excused juror 9 prior to jury deliberations.

Supporting facts (state briefly without citing cases or law):

The appellant Chawa See incorporates the excellent briefing of his co-appellant arguing and concluding that excusing juror 9 without cause was reversible error. He will add additional authority here.

The trial judge held a hearing and examined juror 9 at a recess in mid-instructions because juror 9 reported that she felt she might need to bring to the court's attention the fact that Chawa's sister had been a student of hers and attended her high school. The juror was not sure this was necessary, but she acted so that persons better acquainted with the law could decide what to do. The juror told the court this would not affect her verdict or impartiality, and although the juror would feel badly when she saw Nalae at school she did not request to be relieved. She twice stated that she could be fair. Before swearing in the jury, the court

4.

asked if any of the potential jurors had anything else to tell the court and parties. No potential juror responded.

The court decided to let juror 9 remain.

It stated:

"Actually if I was convinced that she was somehow prejudiced in some way and that she was not sincere, I would kick her immediately. But I was... I was convinced of her sincerity the more she talked that she wanted to do her duty, remain on the jury, and that she was not going to let anything affect her ability to be fair and impartial. That's the impression I got from her. She stumbled on her words a little bit, but I think it might have been because English was not her first language. But she seemed to want to stay on, but she said she would leave it to the experts, which is what she called us, and I'm not convinced she can't be fair, so I'm going to leave her on the jury at this point in time."

The trial court changed its mind after closing arguments. The court discharged Juror 9 and told her:

"... as I thought about this during the arguments my feelings is we may be putting an undue burden on you, since you're actually the teacher of somebody

5.

that's closely watching and involved in this case, and I don't know that it's fair that we do that, so I'm going to excuse you from this trial. I know that you've said that you can be fair, and I believe maybe you well can, but it's just that when somebody had a relationship like that on a case like this, I think we're asking too much of the juror to set that aside and ignore it all and try to be objective. I think we're just asking too much of you to do that."

Appellant asserts that after the court determined that Juror 9 could be fair, speculation about potential fallout from the juror's decision is not good cause for discharge.

Penal Code section 1089 limits the circumstances under which a trial court may discharge a juror and provides in relevant part:

If at any time, whether before or after final submission of the case to the jury, a juror dies or become ill, or upon other good cause shown to the court is found unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged and draw the name of an alternate, who shall then take his place in the jury box, and be subject to the same rules and regulations, as though

6.

he had been selected as one of the original jurors.

Thus in this present case, the statute permitted the discharge of Juror 9 only if there was good cause that the juror was unable to perform her duties. Juror 9 repeatedly stated that she could be fair and the court believed her.

The court put off further discussion while resuming oral instruction with all the jurors present. Although not finding the juror incapable or disqualified, the court excused Juror 9 on the basis that society should not place a person in a situation where they might have to face a relative of one they found guilty and if Juror 9 alternatively were to vote not guilty there might be an unspecified perception by unspecified persons of bias.

• Smith v. Phillips (1972) 455 U.S. 209, 217)

Simply because a juror may feel a very human sadness upon possibly encountering relatives of a person he or she found guilty is no more than a reflection of such virtues and frailties, but is not the type of disqualification envisioned by section 1089 of the penal code."

• Perez v. Marshall (9th Cir. 1997) 119 F.3d 1422, 1426

"the Sixth and Fourteenth Amendments of the United

7.

Case 1:10-cv-01520-JLT  Document 1  Filed 08/23/10  Page 18 of 31

States Constitution are also implicated when a juror is removed without good cause.

8.

Case 1:10-cv-01520-JLT Document 1 Filed 08/23/10 Page 19 of 31

# GROUND 2

# SUPPORTING FACT

Pg.10-18

9.

(b) Ground two:

The presentation of an excessive number of gang incidents denied a fair trial and due process of law, and in Chawa See's case was particularly because his prior acts of being a minor in possession of a gun in his room at age fifteen and of making "terrorist threats" when he was fourteen years old lack any reasonable nexus to gang activity and were unnecessary, cumulative, and highly likely to be prejudicial.

## Supporting Facts

Appellant Chawa See should not have had prior incidents introduced against him. The court ruled that they were relevant and not barred by evidence code Section 352. As acknowledged by the Court of Appeal, the prosecutor introduced evidence of at least ten crimes committed by gang members, as well as numerous field contacts with appellant, and the prosecutor emphasized this evidence in jury argument. The court of Appeal did not reject appellants' argument that the trial court abused its discretion in admitting cumulative evidence, in the form of an excessive number of gang crimes and gang-related contacts, on issues not reasonably subject to dispute, but rather assumed arguendo that appellants were

10.

Correct on this point while finding any such error to have been harmless. As pointed out, and the Court of Appeal assumes, the number of "predicate acts" was unnecessary and excessive:

<u>Predicate offenses</u>

1) On June 30, 2004, Chava Seechan and a few OT members took ice cream from an ice cream truck. After the owner demanded payment, Seechan went around the corner put a blue bandana over his face, returned and open fire on the truck.

2) Later that night Seechan and Aitang went into a grocery store on North Dinuba and Houston and took beer without paying. When the security guard attempted to stop them, Seechan fired at the security guard. Seechan was an OT member. He was convicted of the attempted murder of the ice cream truck driver and robbery with gang enhancement.

3) Aitang had a juvenile petition sustained for attempted robbery with a gang enhancement for the incident at the grocery store.

4) On November 15, 2004, OT Roger Saesee got into an argument with Norteno Joe Fernandez over turf. Saesee shot and killed Fernandez.

5) On April 30, 2005, Norteno David Garcia was sitting in front of his house when Damrong Seechan and other Oriental Troop members approached and asked him if he

11.

banged. Seechan shot and killed Garcia. Seechan plead to manslaughter with gun and gang allegations.

6) Mathew Fernandez, a Norteno, and his friends were at a store when Smith Saesee and other OT members walked in. An argument led to a physical altercation. Saesee pulled out a gun and shot Fernandez and paralyzed him. Saesee was convicted of mayhem, shooting into an occupied building and assult with a deadly weapon with gang allegations.

7) On May 8, 2006, Aipio Saesee, an OT and 15 years old female Norteno exchanged words about turf. Aipio left and returned with a gun. He fired at the girl's house from his car, killing the girls sister. He was convicted of murder with a firearm and gang enhancement.

8) On March 10, 2005, Chawa was contacted with OT Chaleh See regarding a vehicular burglary and the theft of a car stereo. A juvenile petition was sustained against Chawa for that theft.

9) On April 6, 2005, Chawa got into a disagreement with his girlfriend's family. He threatened to shoot the victims and identified himself as a person who associates with gangs. A juvenile petition was sustained for criminal threats.

10) On December 20, 2005, the police conducted of probation search of Chawa's home. Chawa wasn't there, but La vang was. A juvenile petition was sustained for possession of gun.

12.

Field Contacts

1.) May 7, 2005, Officer Lyon contacted Chawa and found that he had a blue bandana.

2.) May 3, 2005, Officer Gonzalez contacted Chawa at a family disturbance and Chawa admitted being a Crip and that his moniker was C-Luc.

3.) On March 10, 2005, Chawa was booked into juvenile hall wearing blue shoes.

4.) On April 7, 2005, Chawa was booked into juvenile hall wearing a blue sweater.

5.) On May 3, 2005 Chawa was wearing a blue shirt when booked by the Visalia police.

6.) On December 20, 2005, he possessed a gun.

7.) On October 18, 2006, Chawa admitted he was an OT gang member when booked at juvenile hall.

In sum, the prosecution offered 10 "Predicate acts," and 7 field contacts regarding Chawa. None of the contacts were sanitized of the jury learned of the defendants' possible involvement in other crimes, arrests and violence that was speculative, unrelated to the present offense and prejudical. These contacts were admitted, presumably, to show that ~~the defendants~~ the defendant were gang members, even though the defendant admitted gang membership and according to expert Fahoum, some of the incidents alone were

13.

sufficient to validate the defendants are gang members.

Although the jury might have been told about the defendants' admissions or the facts that they were wearing gang colors when contacted, the other bad acts were irrelevant and the admissible contacts should have been sanitized to exclude them.

Evidence code section 352 gives the court discretion to exclude relevant evidence when its admission will necessitate an undue consumption of time or "create substantial danger of undue prejudice, of confusing the issues or of confusing the jury."

In this present case, the many of the circumstances under which the police contacted appellant and the others were unnecessary to prove the elements of this case.

Chawa See had additional prejudice in that evidence was permitted, over objection, of two highly prejudicial acts, ostensibly to show knowledge of gang activity at the time of the charged offense, which was more than amply-excessively- demonstrated by the other acts. These included an incident when he was fourteen

14.

years old and at his girlfriend's house. He lay on the couch drunk and was told he was not welcome. He said he would go home and get his gun. His mother arrived and they had a dispute. He pleaded guilty to one count of the petition charging numerous terrorist threat counts. Also in 2005, a probation search turned up a gun in his room.

The prosecutor stated he would introduce these two crimes as predicate felonies, without going into details, and as a basis for expert testimony on how the defendant was an active member of the Oriental Troop (OT) gang. The objective was to show the defendant's knowledge of a pattern of gang activity. The defense protested that there had to be some nexus between the offenses and the gang, but the prosecutor pointed out he needed only to show the person was a gang member and not that the offenses were related to gang activity. The court ruled tentatively that the evidence would be admissible to prove predicate offenses. Later, the prosecutor added he had to prove personal knowledge that the gang engaged in a pattern of gang activity. The defense argued the Penal Code 422 crime (the girlfriend's house incident) was not in any way connected to a gang and was unduly prejudicial. The prosecutor repeated he did not have to show it was a gang related offense, just that gang members were engaged in a pattern of criminal activity. The court ruled it was admissible. The

15.

Case 1:10-cv-01520-JLT Document 1 Filed 08/23/10 Page 26 of 31

court expressed some concern about the possession of a firearm as a predicate offense, but the district attorney referred the judge to the list in Penal Code section 186.22 and item (2). The court ruled both were admissible.

The California Supreme Court has stated that because other-crimes evidence is so inherently prejudicial, its relevancy is to be examined with care.

As argued there were ample other predicate offenses, so these were unnecessary, and each of them was highly prejudicial — threatening to kill his own mother and illegally being in possession of a firearm were permitted in a murder by firearm case. The fact that Chawa was but 14 made him barely over the age where his understanding of what he was doing would have had to be proven. (See Pen. Code 26, para. one.) A fourteen years old issuing threats to his mother when drunk is simply not so weighty that it warranted use when the element was proven by other offenses.

The prosecuting attorney was somewhat inconsistent in his arguments that (1) he did not have to show the offenses were gang related activities and (2) the offenses were proof that the defendant knew gang members (i.e. himself) were engaged in a pattern of criminal activities. However, even to the extent the arguments were not entirely inconsistent, the

16.

offenses were still merely cumulative on a point not seriously contested (Chawa's knowledge of a pattern or membership in a criminal street gang). They were unduly and cumulatively prejudicial in the context of this case. They denied the appellant a fair trial.

Evidence that the fourteen year old threatened to harm his mother when he was criticized for being drunk and was convicted of a "terrorist threat" had little probative value on the issues in dispute in this trial but rather suggested an incorrigible person given to respond with violence. It was propensity evidence.

The jury here was inundated with numerous "predicate acts" theory evidence, and the purpose of the evidence of the threat to the defendant's mother was far from clear. There was no instruction which told the jurors not to consider such evidence as propensity evidence. (See, e.g., 4RT 794-843.) The lack of any significant nexus to a gang activity, the number of other offenses, the absence of any limiting instruction and the label of being a "terrorist threat" without explanation of the elements, all left the juror with evidence which had no apparent direct connection to the offenses charged other than as proof of a propensity for violence. There is no question that a youth's acts of violence would be recognized as showing propensity,

17.

Case 1:10-cv-01520-JLT Document 1 Filed 08/23/10 Page 28 of 31

including "homicidal tendencies".

Chawa's defense contested the efforts by the prosecutor with the support of his co-defendants to place responsibility for the shooting on him, as opposed, for example, to Billy Her (an MB gang member) or Lavang, and as opposed to proof beyond a reasonable doubt. (See, e.g., 4RT 903-907.) Introducing propensity evidence, particularly evidence of a terrorist threat on his own mother, painted a picture that invited speculation hidden from view by its inflammatory nature. A gang member who threaten his own mother would be seen as a person who solved his problems with violent actions, and thus be more than ready to shoot and kill a rival. Chawa did not stand a chance of having the evidence of the actual charged crime evaluated fairly.

°United States v. Moccia (1st Cir. 1982) 681 F. 2d 61, 63)

"Holding that the prosecutor could not admit evidence to prove a prior conviction when the defendant offered to stipulate to the fact, the United States Supreme Court recognized that evidence of prior bad acts, although relevant, creates a risk that the jury will convict for crimes other than those charged-or that, uncertain of guilt, convict anyway because a bad person deserves punishment. The risk "creates a prejudicial effect that outweighs ordinary relevance."

18.

## C. Ground three -

Cruel and/or unusual punishment and abuse of discretion in imposing life without parole.

## Supporting Facts (state briefly without citing cases or law)

Sentencing a minor in his middle teens to be forever barred from freedom and condemned to live his entire life within walls of the prison without hope is submitted to be excessive, cruel, and unusual punishment. That teenaged brains and thinking are different from adults is increasingly recognized. Although, taking the facts as most favorably construed in favor of the judgement, the crime here was intentional, deliberate, premeditated, and violent, some consideration for his age and immaturity would not be misplaced. The adult Billy Her, whose distraction of the victim and pointed finger signal to shoot suggests the leadership role, was permitted to plead to manslaughter and given sixteen years.

As for the court's exercise of discretionary sentencing to the alternative of life with the possibility of parole the reason given against it was "the sophistication and the manner in which this crime was carried out." However, there was little to support that reasoning. Other than Her distracting the victim and signaling to shoot, it appears to have been happenstance and the group encountered the victim and that the victim decided to stand his own ground rather than follow the advice of friends. It is true that Her, whom the prosecutor labeled a liar, stated that he had overheard a conversation in which Chawa allegedly told a person who had experienced difficulty with

19.

the victim in juvenile hall that he would take care of it; however, the circumstances belie that suggesting of planning in advance of the time of the encounter. The manner in which the crime was carried out shows no sophistication: there was an encounter, a distraction, a signal to shoot, and a shooting in the midst of witnesses.

20.

PROOF OF SERVICE BY UNITED STATES MAIL

I, ___Chawa See_____, am over the age of eighteen years, a resident and prisoner of the State of California with a present mailing address of: High Desert State Prison, P.O. Box 3030, Susanville, CA 96127-3030.

On ___Aug. 8 2010_____, I served the following document(s):

___Petition under 28 USC 2254 for writ of habeas___

___corpus by a person in state custody_____
by placing the documents in a sealed envelope(s), with First Class postage having been placed thereon. Delivered the envelope(s) to a Correctional Officer who then signed & dated the back of the envelope and s/he then deposited such envelope(s) in the prisons legal mail system for processing and delivery to the United States Postal Service, for delivery to the addressee(s):

Clerk
United State District Court
2500 Tulare Street, Suite 1501
Fresno, Ca 93721

I declare that there has been regular U.S. Mail pick-up by the Correctional Officers at the prison where I posted the envelopes(s) and regular communication by mail between the place of mailing and the places(s) so addressed.

I declare under penalty of perjury under the laws of the State of California and the United States that the forgoing is true and correct and that this declaration was executed on ___Aug 8 2010_____, at Lassen County, in Susanville, California.

_____
Declarant

NOTE: Pursuant to the holdings in Houston v. Lack (1988) 487 U.S. 266,108 S.Ct. 2379,1010 L.Ed.2d 245; and, In re Jordan (1992) 4 Cal.4th 116, 13 Cal.Rptr.2d 878,840 P.2d 983, (inmate legal documents are deemed filed on the date they are delivered to prison staff for processing and mailing via the institutions internal legal mail procedures).